UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BRENDA BURTON, et al.,

               Plaintiff,

    v.

COUNTRYWIDE BANK, FSB, et al.,

               Defendants.

Case No. 1:10-cv-00298-EJL-LMB

**ORDER, REPORT AND RECOMMENDATION**

Before the Court is Defendants' Motion to Dismiss (Dkt. 18) and Motion to Take Judicial Notice (Dkt. 19) and Plaintiffs' "Verified Petition for In Rem Action to Validate Defendants/Respondents Interest and Standing (Dkt. 38). This case was referred for all matters to the undersigned by Order dated September 16, 2011 (Dkt. 31). The Court heard oral argument from the parties on February 27, 2010, and took the matter under advisement. Having considered the parties' oral arguments, written memoranda[1] and the record fully, the Court issues the following Order and Report and Recommendation.

---

[1]The Court has considered Plaintiffs' four supplemental filings at Dkts. 49 - 51.

# BACKGROUND

This action arises out of the non-judicial foreclosure of Plaintiff Sterling

Mortensen's residence located at 4282 N. Forest Meadow Ave in Boise, Idaho ("the

property").[2] In February 2008, Mortensen executed a promissory note (the "Note") in the

amount of $640,000 with Countrywide Bank, FSB, secured by a Deed of Trust on the

property. (Am. Complt., ¶ 3.1, Dkt. 10.) Countrywide recorded the Deed of Trust on

February 8, 2008. (*Id.*, ¶ 3.2.) The Deed of Trust lists Mortensen as the "Borrower,"

Countrywide Bank, FSB as the "Lender," Fidelity National Title Insurance Co. as the

"Trustee" and Mortgage Electronic Registration Systems, Inc. (MERS) as "a separate

corporation that is acting solely as a nominee for Lender and Lender's successors and

assigns," as the "beneficiary under this Security Instrument." (Am. Cmplt, Exh. 22, Dkt.

10-3, p. 10.)

Countrywide was acquired by Bank of America, N.A. in 2008, and its subsidiary

BAC Home Loans Servicing, LP ("BACHLS") became the mortgage servicing company

on Plaintiffs' mortgage loan. (*Id.*, ¶ 1.1.)

In late 2008, Plaintiffs filed bankruptcy. (*Id.*) Plaintiffs' bankruptcy attorney sent

authorization to both Bank of America and Countrywide Bank to contact the Plaintiffs to

---

[2]Although Maureen Mortensen is named as a Plaintiff in the caption of this action, she is not alleged to be a party in the allegations of the Amended Complaint. Mr. Mortensen is the only signatory on the Note. He is listed as "Borrower," on the Deed of Trust, taking the property as his sole and separate property. Both Mortensens are signatories on the Deed of Trust, however, and the Court will consider Maureen Mortensen as a Plaintiff for these matters.

ORDER, REPORT & RECOMMENDATION  2

discuss a loan modification or restructure. (*Id.,* ¶¶ 3.3 - 3.5.) Bank of America

acknowledged it received requests for access to the Plaintiffs' loan file from

Neighborhood Housing Services, Inc., presumably related to structuring a loan

modification. (*Id.*, Exhs. 1 - 3, Dkt. 10-1.) Countrywide Bank also sent the same

acknowledgment. (*Id.,* Exh. 5, Dkt. 10-1.)

In August 2008, Plaintiff received a notice from Bank of America of its intent to

accelerate the loan and a demand for $45,933 in overdue principal and interest. (*Id.*,

¶ 3.10; Exh. 9, Dkt. 10-2.)

Bank of America filed a Motion for Lift Stay in the bankruptcy case on May 21,

2009, to allow it to foreclose on the Deed of Trust, which the bankruptcy court granted on

June 16, 2009. (*Id.*, ¶ 3.6, Exh. 6, Dkt. 10-1; ¶ 3.9, Exh. 11, Dkt. 10-2.) Plaintiffs filed

no objection to the motion. (*Id.*)

On October 16, 2009, MERS assigned the Deed of Trust to BACHLS, which

appointed ReconTrust as the Successor Trustee; ReconTrust contemporaneously executed

a Notice of Default. (Am. Cmplt., ¶ 3.11 and Exhs. 10, 23 & 24, Dkt. 10-3.) Each

document was recorded with the Ada County Recorder's office within two weeks. (*See

id.*) On October 30, 2009, ReconTrust sent a letter to Plaintiffs giving them notice of their

right to dispute the validity of the debt within 30 days. (*Id.*, 3.17; Exh. 12, Dkt. 10-2.)

On November 11, 2009, ReconTrust executed a Notice of Trustee's Sale to take place on

March 22, 2010. (Id., 3.11; Exh. 10, Dkt. 10-2.) Plaintiffs acknowledge they received

both the Notice of Default and Trustee's Sale in a letter from ReconTrust on or about

November 17, 2009. (*Id.*, ¶ 3.1.)

Plaintiffs responded disputing the validity of the debt on November 25 and 30,

2009. (*Id.*, ¶¶ 3.18, 3.19; *see* Exhs. 13, 26.)[3]

By letters dated January 5, 2010 and February 10, 2010, Bank of America

acknowledged receipt of Plaintiffs' inquiries. (Id., Exhs. 14 & 15, Dkt. 10-2.) By letter

dated March 4, 2010, Bank of America responded substantively to the inquiries

maintaining that the Plaintffs' debt was valid and the foreclosure was being undertaken

pursuant to valid and enforceable loan obligations, and enclosing copies of the original

loan documents. (*See id.*, ¶¶ 3.23, 3.27; Exhs. 17 & 19, Dkt. 10-2 & 10-3.) ReconTrust

likewise provided validation of Plaintiffs' indebtedness with reference to the original loan

documents. (*Id.*, ¶ 3.28, Exh. 21, Dkt. 10-3.)

Plaintiffs have sued BACHLS, the mortgage loan servicer; ReconTrust Company,

the trustee of the Deed of Trust; Countrywide Bank, FSB, the original lender; Mortgage

Electronic Services, Inc., as "Beneficiary," of the Deed of Trust; and John and Jane Doe

entities and individuals, under various legal theories for their alleged actions related to the

foreclosure. Plaintiffs allege breaches of fiduciary duties (Claims I and II), violations of

the Truth in Lending Act (TILA)(Claim III), Idaho Deeds of Trust Act (Claim IV), Real

---

[3]Plaintiffs allege they sent a "large letter" requesting information to substantiate "standing" to file instruments with the Ada County Recorder to "all the parties of interest on documents and correspondence up to that time," and reference "Exh. 26." Exh. 26 is a copy of a "Certificate of Service." Plaintiffs'alleged letter is not attached to the exhibit.

Estate Settlement Procedures Act (RESPA) (Claim V), and Consumer Protection Act (Claim VI) and Intentional and Negligent Infliction of Emotional Distress (Claims VII and VIII). They seek a declaratory judgment against each Defendant that it acted unlawfully and that the sale of the property is void, and for return of the property.

Defendants move to dismiss all of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.

## REPORT

### 1. Standard of Review for a Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Rule 8(a) of the Federal Rules of Civil Procedure sets forth the minimum pleading requirement, which is that the plaintiff provide only a "short and plain statement of the claim showing that the pleader is entitled to relief," and "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955(2007).

When reviewing a motion to dismiss, the court must accept as true all non-conclusory, factual allegations made in the complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007). The court examining a complaint for sufficiency of information must draw all reasonable inferences in favor of

the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

After any conclusory statements have been removed, the court must then analyze the remaining factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Delta Mech., Inc.*, 345 Fed. Appx. at 234. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 555). In addition, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In sum, a party must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *Iqbal*, 129 S. Ct. at 1949.

In discussing this standard, a recent Tenth Circuit Court of Appeals opinion stated that "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In this way, while "[s]pecific facts are not necessary," a plaintiff must allege enough facts to "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."
*Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam* ) (internal citation omitted).

**2.      Motion to Take Judicial Notice**

Defendants request the Court take judicial notice of several documents filed with the Ada County Recorder's office pertaining to the Propery, docket reports from this case and Plaintiffs' bankruptcy petition, as well as the original Note referenced in Plaintiffs' Amended Complaint.  (Dkt. 19.)

Generally, with respect to Rule 12(b)(6) motions, the Court may not consider any evidence contained outside the pleadings without converting the motion to one for summary judgment under Fed. R. Civ. P. 56, and allowing the non-moving party an opportunity to respond. *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003).  "A court may, however, consider certain materials– documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice– without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed.1999)); *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987)).

The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into

motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004)**.**

The Court has considered the Affidavit of Amber N. Dina in Support of Motion for Judicial Notice (Dkt. 19-1) ("Dina Affid."), and the documents themselves attached to the motion as Exhs. A - E. The Court grants the motion and will consider each of the following documents in deciding Defendants' motion to dismiss:

Exh. A:     Deed of Trust, Ada County Recorder's Office, Instrument No. 108014446

Exh. B:     Fixed/Adjustable Rate Note

Exh. C:     Docket Report, *In re Sterling Mortensen*, Bankruptcy Petition No. 08-2964-JDP, United States Bankruptcy Court, District of Idaho.

Exh. D:     Notice of Default, Ada County Recorder's Office, Instrument No. 109121588.

Exh. E:     Civil Docket Report, *Burton et al. v. Countrywide Bank*, FSB et al., Case No. 1:10-cv-298-LMB, United States District Court, District of Idaho.

**3.     Status of the Amended Complaint.**

During the hearing on February 27, 2012, Plaintiffs referred to several documents and allegations set forth in their original complaint filed in this action. Plaintiffs contend they were unaware of whether the Court accepted their Amended Complaint, and asked that the Court make a ruling on the amended complaint. In reviewing the procedural record of this matter, the Court notes that Plaintiffs were granted leave to file their Amended Complaint previously by Order dated March 22, 2011 (Dkt. 9). Plaintiffs' filed

ORDER, REPORT & RECOMMENDATION  8

their Amended Complaint on April 7, 2011 (Dkt. 10), and Defendants moved to dismiss it on June 10, 2011. (Dkt. 18.)

The Amended Complaint replaced and rendered moot the original complaint. An Amended Complaint must set forth all of the facts and all of the grounds for relief completely, and may not incorporate any portion of a prior complaint. Idaho Dist. L. Civ. R. 15.1. Any allegations or claims made in an earlier complaint which are omitted from an amended complaint are deemed to have been voluntarily foregone. Accordingly, the only pleading the Court or Defendants address in connection with the Motion to Dismiss is Plaintiffs' Amended Complaint. (Dkt. 10.)

**4.      Standing**

A foundational basis of Plaintiffs' complaint against all Defendants is that none have the right to foreclose on the Property because "they" have not proven they have "standing" to do so. Plaintiffs argue essentially that the Idaho Uniform Commercial Code provisions governing a transferee's right to enforce a negotiable instrument require that the transferee prove that the original Note and/or Deed of Trust bear certain endorsements and was/were "delivered" within the meaning of those statutes. *See* Idaho Code §§ 23-4-203 & 204. Because the Defendants have not produced the original "wet ink" Note, Plaintiffs contend, they cannot establish the power necessary to enforce the Deed of Trust, and do not have "standing" to undertake the non-judicial foreclosure.

Plaintiffs' argument is what is referred to as the "show me the Note" theory, and has been squarely rejected by the Supreme Court of Idaho as a tactic to avoid an otherwise legal non-judicial foreclosure in Idaho. *Trotter v. Bank of N.Y. Mellon et al.,* __P.3d__, 2012 WL 206004 (Idaho 2012); *see also Meyer v. Bank of America, N.A.*, 2011 WL 458762, *3 (D. Idaho 2011). In *Trotter*, the Supreme Court of Idaho explained:

> While it is true that a party must have standing before it may invoke the jurisdiction of a court, the foreclosure process in the [Idaho Trust Deeds] Act is not a judicial proceeding. . . . Instead, 'the procedures to foreclose on trust deeds outside of the judicial process provide the express-lane alternative to foreclosure in the judicial system and strip borrowers of protections embedded in the judicial foreclosure.'. . . Thus, as an 'alternative' that is 'outside the judicial process,' the [Idaho Trust Deeds] Act sets forth all of the requirements to foreclose on a deed of trust.

*Id.* at *3 (citing and quoting *Fed. Home Loan Mortg. Corp. v. Appel*, 137 P.3d 429, 433 n.1 (Idaho 2006)).

Thus, to the extent Plaintiffs' claims are generally premised on the argument that the Trustee must produce the original "wet-ink" Note and Deed of Trust to undertake a non-judicial foreclosure on the Property, this action must fail.

**5.    Breach of Fiduciary Duty Claims**

Plaintiffs' First and Second causes of action allege claims for Breach of Fiduciary Duty against Defendant BACHLS. In the first breach of fiduciary claim, Plaintiffs allege that BACHLS "had superior knowledge regarding the consequences of the failure to procure the loan modificaiton and delay of sale over the unsophisticated Plaintiffs," that Plaintiffs relied on BACHLS's advice, and that "the position of trust, confidence, and

reliance [BACHLS] occupied as Plaintiffs' alleged mortgage holder created fiduciary or quasi-fiduciary duties owed by [BACHLS] to the Plaintiffs." (Am. Cmplt., ¶ 4.2.) Plaintiffs further allege that BACHLS breached the duty by "constructively refusing to cooperate with Plaintiffs' efforts at a resolution of this matter" and acting in bad faith in violation of serveral named statutes. *Id.*, ¶ 4.4.

Plaintiffs' second breach of fiduciary duty claim is less clear. It is titled as against BACHLS only, but sets forth allegations against all defendants. It alleges BACHLS and the defendant "trustee of the Deed of Trust" breached their fiduciary duty by refusing to postpone the trustee's sale or the foreclosure while Plaintiffs were in the process of trying to obtain a loan modification. *Id.*, ¶¶ 5.2 - 5.4. The claim also refers to all other defendants as having fiduciary duties which were violated by failing to provide "meaningful contact information regarding who actually had the promissory note and deed of trust to prevent the trustee's sale." *(Id.*, ¶ 5.3.)

"In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Bushi v. Sage Health Care, PLLC*, 146 Idaho 764, 203 P.3d 694, 699 (2009) (citation and marks omitted); *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–881 (9th Cir.2007) (applying Nevada law).

Defendants move to dismiss Plaintiff's claims for breach of fiduciary duty on the basis that no fiduciary relationship exists between Plaintiffs and any Defendant. The Court agrees.

### a.  ReconTrust

A foreclosure trustee has no fiduciary duty to the borrower, since "a trustee in a non-judicial foreclosure is 'not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary.'" *Gaitan v. Mrtg. Electronic Reg. Sys.*, 2009 WL 3244729, at *12 (C.D. Cal. Oct. 5, 2009) (citing *Hendrickson v. Popular Mortg. Servicing, Inc.*, 2009 WL 1455491, at * 7 (N.D. Cal. May 21, 2009) (quoting *Pro Value Properties, Inc. v. Quality Loan Service Corp.*, 170 Cal.App. 4th 579, 583 (2009)). Plaintiffs claim for breach of fiduciary duty against ReconTrust fails to state a claim upon which relief may be granted.

### b.  MERS

Plaintiffs allege no basis for a fiduciary duty owed to them by MERS. The Deed of Trust clearly states that MERS acts on behalf of the lender, or assigns. There are no actual allegations against MERS beyond its act of assigning the Deed of Trust to BACHLS in its capacity as the nominal beneficiary. This claim fails to state a claim upon which relief may be granted.

### c. Countrywide

It is well settled that "Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction." *Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints*, 42 P.3d 715, 721 (Idaho Ct. App. 2002) (citing *Mitchell v. Barendregt*, 820 P.2d 707, 714 (Idaho Ct. App.1991)). Moreover, generally "[a] commercial contract creates a fiduciary relationship only when one party agrees to serve in a fiduciary capacity." *Household Group LLLP v. Fuss,* 2007 WL 1650933 (N.D. Cal. 2007) (citing e.,g., *Morgan v. Am. Fid. Fire Ins. Co.*, 210 F.2d 53, 54-56 (8th Cir. 1954) (finding fiduciary relationship in holding premiums where insurance agent agreed to act as trustee).

No fiduciary relationship generally exists in the context of a debtor-creditor relationship, including that of a lender-borrower. *See Idaho First Nat. Bank v. Bliss Valley Foods, Inc.,* 824 P.2d 841, 852 (Idaho 1991)(*citing Black Canyon Racquetball Club v. First National Bank*, 804 P.2d 900, 905 (Idaho 1991)(debtor-creditor is generally not a fiduciary relationship) and *Peterson v. Idaho First Nat. Bank*, 367 P.2d 284 (Idaho 1961) (depositor-customer situation is considered a debtor-creditor relationship)).

Plaintiffs fail to allege any facts supporting more than a lender-borrower relationship between Plaintiffs and the original lender of the mortgage loan, Defendant Countrywide. As such, Plaintiffs also fail to state a claim upon which relief may be granted for breach of fiduciary duty against this defendant.

d.    **BACHLS**

The relationship between a borrower and the servicing entity for the loan is not one generally giving rise to fiduciary duties. *See Wade Baker & Sons Farms,* 42 P.3d at 721; *Castenada v. Saxon Mortg. Services, Inc.*, 687 F. Supp.2d 1191, 1198 (E.D. Cal. 2009) (citing *Watts v. Decision One Mortg. Co.,* 2009 WL 2044595 (S.D. Cal. 2009)*, Marks v. Ocwen Loan Servicing,* 2009 WL 975792, at *7 (N.D. Cal. 2009)).

Plaintiffs allege in this case, however, that they received advice from BACHLS on the loan modification and relied on it, and which created a fiduciary or "quasi-fiduciary" relationship between these parties. The Court disagrees.

It is true that "[a] fiduciary relationship does not depend upon some technical relation created by or defined in law, [and] exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest in one reposing the confidence." *Jones v. Runft, Leroy, Coffin &Mathews, Chartered*, 873 P.2d 861, 868 (Idaho 1994) (*quoting Stearns v. Williams*, 240 P.2d 833, 840-41(Idaho 1952)). However, "[t]he facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party." *High Valley Concrete, LLC v. Sargent*, 234 P.3d 747 (Idaho 2010)(citing *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 853 (1991)(quoting *Burwell v. S.C. Nat'l Bank*, 340 S.E.2d 786, 790 (S.C. 1986))).

A review of the Amended Complaint reveals that Plaintiffs make no allegations supporting a foundation to believe that BACHLS was acting in their interests and not on its own behalf, or that of the lender, as the loan servicer. As such, Plaintiffs fail to allege any facts supporting more than an arms-length, commercial relationship between a borrower and the servicing entity for the loan in which no fiduciary obligations arise.

For the foregoing reasons, Plaintiffs' claims for breaches of fiduciary duty agaisnt all defendants fail to state a claim upon which relief may be granted.

## 6.    Truth In Lending Act (TILA) Claims

In their Third Cause of Action, Plaintiffs allege that they "did not receive documents and disclosures" from the Defendants required under the Truth In Lending Act, 15 U.S.C. § 1601 *et seq*., and are therefore entitled to damages and/or rescission rights "that are revealed through a review of documents to be obtained through discovery." (Am. Cmplt, ¶ 6.2.)  They also allege under this claim that the "Defendants unlawfully split Plaintiffs' note and deed of trust, pooling and securitizing them, and removing them from the State Idaho, caused the note to be null and void, leaving the Defendants without standing to foreclose and sale [sic] Plaintiff's residence, thus requiring the return of Plaintiffs residence." (*Id.*, ¶ 6.4.)

Defendants move to dismiss Plaintiff's TILA claims on the bases that (1) Plaintiffs failed to allege any breach of TILA, (2) the claims are time-barred, (3) rescission is not an

available remedy under TILA, (4) Plaintiffs failed to tender the amount of the loan due, and (5) Plaintiffs fail to allege reliance on any alleged inadequate disclosure.

### a. Allegations vague and conclusory regarding TILA violation claim.

Defendants argue, and the Court agrees, that Plaintiffs' allegations are generally insufficient to support a violation of TILA. *See Marks v. Chicoine*, 2007 WL 160992, at *7 (N.D. Cal. Jan. 18, 2007) (dismissing TILA claims for failure to allege how defendants violated the statute); *Tasaranta v. Homecomings Fin. LLC*, 2009 WL 3055227, at *3 (S.D. Cal. 2009) (same). Plaintiffs' allegations must be based on more than mere speculation. Plaintiffs fail to allege how TILA was violated, and what documents or disclosures they were not provided, and how they relied upon these alleged inadequate documents or disclosures.

As noted above, Plaintiffs allege that the documents and disclosures they did not receive cannot be revealed until they receive discovery. This allegation confirms that Plaintiffs do not know whether they did or did not receive documents or disclosures that they should have, and as such, they cannot allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949. As such, Plaintiffs' allegations of a TILA violation fail to state a claim upon which relief may be granted.

### b. Statute of Limitations

The statute of limitations for a TILA claim is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Shaw v. Lehman Bros. Bank, FSB,* 2009 WL 790166, at *4 (D. Idaho 2009). Time begins to run when the plaintiff enters into the loan agreement. *See King v. Cal.*, 784 F.2d 910, 915 (9th Cir. 1986); *Shaw*, 2009 WL 790166, at *4. Plaintiffs obtained the loan on February 1, 2008. (Am. Cmplt., Exh. 22, Dkt. 10-3.) They filed the original complaint on June 15, 2010 (Dkt. 1), over a year past the statute of limitations deadline. Accordingly, Plaintiffs' claims are time barred.

Plaintiffs argue that (1) the statute of limitations has not run because it begins when the violation is discovered, and Plaintiffs only learned of the violation recently, and (2) Plaintiffs are using the TILA action defensively in which case no statute of limitations exists.

Plaintiffs are not entitled to equitable tolling because they have not carried their burden of showing that it applies in this context. Plaintiffs have failed to plead what documents or disclosures they did not receive in violation of TILA, or how they were prevented from discovery of them within the year time frame. *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir.1996) (concluding that plaintiff was not entitled to tolling where "nothing prevented [her] from comparing the loan contract, [defendant's] initial disclosures, and TILA's statutory and regulatory requirements" (*citing King*, 784

F.2d at 915)). The Court cannot make any reasonable inference that Plaintiffs may have a basis for the tolling of the statute.

Plaintiffs cite no authority for their argument that a statute of limitations does not apply in this case because it is "defensive." The Court has no way to know what the Plaintiffs are asserting here.

For the foregoing reasons, the Court concludes that Plaintiff's TILA claim as plead is time barred. Because Plaintiffs' TILA claim is time-barred on the face of the complaint, it fails to state a claim upon which relief may be granted.

### c.     Rescission

Plaintiffs allege no facts supporting actual damages under their TILA claim, or their Amended Complaint generally. They do seek, however, rescission under their TILA claim.  As Defendants point out, recission is not an available remedy with a residential mortgage.  15 U.S.C.A. § 1635(e)(1) (residential mortgage transaction exempted); *see e.g., In re Beach*, 447 B.R. 313 (Bkrtcy. D. Idaho 2011); *In re Schweizer*, 354 B.R. 86 (Bkrtcy. D. Idaho 2006).  The allegations make it clear that Plaintiffs' mortgage is a residential mortgage for which rescission is not available under TILA.

Plaintiffs also fail to allege tender of the amounts due and owing on the loan. Plaintiffs allege they have good credit standing and should be entitled to a loan modification, but do not allege the ability to pay what is due.  "The purpose of rescission under TILA is to return both parties to the status quo ante." *LAL v. American Home*

*Servicing, Inc.*, 680 F.Supp.2d 1218 (E.D. Cal. 2010) (*citing Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003)).  The Ninth Circuit Court of Appeals allows the district court to use its discretion to "impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1172.  Courts have used this discretion to require plaintiffs to plead the ability to tender payment in their TILA claims. *See, e.g., LAL*, 680 F.Supp.2d at 1222; *Manuel v. Discovery Home Loans, LLC*, 2010 WL 2889510 (N.D. Cal. July 22, 2010).  Plaintiffs allege no facts in their Amended Complaint suggesting they could meet the tender requirement. Accordingly, the Amended Complaint fails to state a claim under TILA upon which relief may be granted.

**7.    Idaho Trust Deeds Act**

Plaintiffs Fourth Cause of Action alleges that Defendants violated the Idaho Trust Deeds Act, I.C. § 45-1501 *et seq*.  As discussed above, the Idaho Trust Deeds Act does not require the original promissory note and deed of trust to be produced to initiate non-judicial foreclosure proceedings. *Trotter v. Bank of New York et. al*,__P.3d__, 2012 WL 206004 (Idaho Jan. 25, 2012); *Meyer v. Bank of America, N.A.*, 2011 WL 458762, *3 (D. Idaho 2011).   Compliance with the procedures set forth in the Act is what is required.

In addition to their "show me the Note" argument discussed above, Plaintiffs allege that the Act is violated because MERS's assignment to BACHLS is invalid. Apparently, Plaintiffs contention is that MERS holds no beneficial interest in the Note to

assign, and is not registered to do business in the state of Idaho. Plaintiffs also appear to allege that the Deed of Trust is not an enforceable interest because of the securitization of the Note.

As an initial matter, as Defendants point out, this claim can only survive, if at all, against the entities which took foreclosure actions – BACHLS and ReconTrust. The claim clearly fails as against the remaining defendants.

As for MERS's assignment, the Deed of Trust clearly intends that MERS act as the agent of the Lender, or its assigns, in administering the deed of trust, that it holds "legal title," and therefore has the authority to do so. *See Cervantes v. Countrywide Home Loans*, No. 09-17364 (9th Cir. Sept. 7, 2011);[4] *Washburn v. Bank of America, NA, et al*, Case No. 1:11-cv-193-EJL-CWD, Report and Recommendation (Dkt. 28) and Order Adopting Report and Recommendation, (Dkt.32).

Further, the allegation that MERS is not registered to do business in Idaho does not appear to state any claim for relief upon which relief may be granted for a violation of the Idaho Trust Deeds Act.

Finally, this Court agrees with the numerous decisions rendered which hold that the securitization of the loan did not extinguish the security interest in the real property. *See, e.g., West v. Bank of America*, 2011 WL 2491295 at *2 (D.Nev. June 22, 2011); *Beyer v. Bank of America*, 800 F.Supp.2d 1157, 1159 (D. Or. Aug.2, 2011); *Hafiz v.*

_____

[4]This case is not yet published in reporting database. It can be found at the Ninth Circuit Court of Appeals' website at: http://www.ca9.uscourts.gov/datastore/opinions/2011/09/07/09-17364.pdf.

*Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039 (N.D. Cal.2009); *Chavez v. California Reconveyance Co.*, 2010 WL 2545006 at *2 (D.Nev. June 18, 2010).

Accordingly, this Court finds that Plaintiffs' claims for violation of the Idaho Trust Deeds Act also fail to state a claim upon which relief may be granted.

## 8.    RESPA Claims

Plaintiffs' Fifth Cause of Action is against all defendants for alleged violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 *et seq.* Plaintiff allege that Defendants violated RESPA by failing to respond to certain "qualified written requests" within 60 days, as required under 12 U.S.C. § 2605(e).  (Am. Cmplt., ¶ ¶ 8.1 - 8.4, Dkt. 10.)  Plaintiffs allege they are entitled to statutory damages in the amount of $1,000 per occurrence, plus any further relief the Court deems equitable.  (*Id.*, ¶ 8.4.)

Defendants move to dismiss the claim on three grounds: (1) Plaintiffs fail to allege any conduct that amounts to a violation of RESPA, (2) Plaintiffs' communications do not constitute "qualified written requests" triggering a duty under RESPA, and (3) Plaintiffs' claim fails because Plaintiffs have not alleged any actual harm which is required to make a claim under the statute.

Defendants first two arguments are related in that they are premised on the argument that RESPA does not apply because none of Plaintiffs' allegations relate to loan "servicing."  RESPA provides that a loan servicer has the duty to respond to a borrower's inquiries "for information relating to the *servicing* of such loan. . . ."  12 U.S.C.

§ 2605(e)(1)(A) (emphasis added). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."

12 U.S.C. § 2605(i)(3).

Defendants argue that because Plaintiffs' allegations refer only to having asked for debt *validation and verification*, and not the payment of principal and interest on the debt, Plaintiffs' requests do not relate to loan servicing, are not "qualified written requests," and no duty to respond is triggered under RESPA. Defendants cite *MorEquity, Inc. v. Naeem*, 118 F. Supp.2d 885, 901 (N.D. Ill. 2000) (granting motion to dismiss where letter "sought information about the vlaidity of the loan and mortgage documents, but made no inquiry as to the status of the . . . account balance") in support.

A recent decision from the Seventh Circuit Court of Appeals appears to disagree with the lower court in that Circuit. In *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676 (7th Cir. 2011), that appellate court explained:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent applicable*, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably

stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond. *See* 12 U.S.C. § 2605(e)(1)(A), (e)(2), and (e)(3); *see also Garcia v. Wachovia Mortgage Corp.*, 676 F.Supp.2d 895, 909 (C.D.Cal.2009) (when construed in light most favorable to borrower, letter was a qualified written request even though it did not contain a statement of reasons for borrower's belief of error; letter provided sufficient detail regarding "other information" being sought); *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F.Supp.2d 1156, 1162 (M.D.Ala.1999) (plaintiffs' claims survived summary judgment where court found that descriptions of payments made to a prior servicer sufficiently stated plaintiffs' reasons for their belief that their account was in error and were qualified written requests).

*Id.*

This Court agrees with the reasoning of the *Catalan* decision. RESPA is a consumer protection statute, remedial in nature, and must be broadly construed to serve its purpose.

Notwithstanding, and assuming Plaintiffs' requests triggered RESPA obligations to acknowledge and respond, the Court does not see a violation alleged in the pleadings. The exhibits attached to Plaintiffs' Amended Complaint show that both Bank of America and ReconTrust treated the requests for information as "inquiries", acknowledged their receipt and responded to Plaintiff's requests and provided copies of the loan documents including the Deed of Trust and the Note substantiating the Plaintiffs' debt. (*See* Am. Cmplt., Exhs. 7, 8, 14, 15 - 21.)

Moreover, Defendants are correct that Plaintiffs' RESPA claim must fail because Plaintiffs have not alleged any actual harm as the result of Defendants' alleged RESPA violations.  12 U.S.C. § 2605(f); *see Amaral v. Wachovia Mortg. Corp.,* 692 F. Supp.2d 1226, 1232 (E.D. Cal. 2010); *Allen v. United Financial Mortg. Corp.*, 660 F. Supp.2d 1089, 1097 (N.D. Cal. 2009).  The statutory damages Plaintiffs' claim are recoverable only where a plaintiff establishes a pattern and practice of RESPA violations, 12 U.S.C. § 2605(f)(1)(B), which Plaintiffs' have not alleged.

Accordingly, Plaintiffs RESPA claim also fails to state a claim upon which relief may be granted.

**9.      Idaho Consumer Protection Act**

Plaintiffs Sixth Cause of Action alleges "Violation(s) of the Consumer Protection Act" (CPA) against all Defendants.  (*Am. Cmplt.*, ¶ ¶ 9.1 - 9.6, Dkt. 10).  Plaintiffs' allegations are based on the contention that none of Defendants had the right to foreclose because MERS lacked authority to appoint a successor trustee on the grounds that it lacked "standing" because the note and deed were "split" and removed from the state of Idaho  and MERS is not registered to do business in the State of Idaho.  *(Id., ¶ 9.2.)* Plaintiffs also allege Defendants breached their fiduciary duties. *(Id., ¶ 9.3.)*  These actions, Plaintiff alleges, constitute "unfair and deceptive practices" in violation of the Idaho CPA. (*Id*. § 9.4.)

Plaintiff does not specify which section of the Idaho CPA Defendants violated, and the allegations fit only, if at all, in the "catchall" provision which prohibits "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." I.C. § 48-603(17).

The Court finds that Plaintiffs' allegations fail to state a claim for violation of the ICPA. First, their allegations are too vague and conclusory to meet the pleading requirements of *Iqbal* and *Twombly*. For example, the complaint does not allege which Defendants committed any act that is considered unfair or deceptive under the ICPA, or what harm or damage the acts caused to Plaintiffs. The allegations also conflict with the factual record contained in the recorded documents. MERS did not appoint a successor trustee, but instead assigned the Deed of Trust to BACHLS, which in turn appointed ReconTrust as the Successor Trustee to initiate the foreclosure. As set forth previously in this opinion, MERS clearly had the authority to assign the Deed of Trust under the agreements Plaintiffs signed.

Finally, as set forth herein, none of the named Defendants owed Plaintiffs a fiduciary duty.

For the foregoing reasons, Plaintiffs complaint fails to state a claim upon which relief may be granted under the Idaho CPA.

**10.     Intentional Infliction of Emotional Distress**

Plaintiffs' Seventh Cause of Action alleges intentional infliction of emotional distress related to the Defendants "poor treatment" of them, and refusal to stop the foreclosure, or give Plaintiffs a meaningful opportunity to respond.

"To prevail on a claim for intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 396 (Idaho 2010) (internal citations omitted). "To be actionable, the conduct must be so extreme as to 'arouse an average member of the community to resentment against the defendant,' and 'must be more than unreasonable, unkind, or unfair.'" *Id.* at 397 (citing 86 CJ.S. Torts § 74 (2009) (citations omitted)).

Defendants move to dismiss this claim, and Plaintiffs' failed to respond. For this reason, the Court may deem Plaintiffs as having consented to dismissal of this claim. Dist. Idaho Loc. Civ. R. 7.1(e)(1). The Court has also reviewed the claim on its merits and concludes that Plaintiffs' allegations do not rise to the level of outrageous conduct required to state a claim upon which relief may be granted on this cause of action. In view of the fact that Plaintiffs have made no claim that they did not owe the mortgage debt, or that it was not in default, the Court cannot find the refusal to stop the foreclosure process as being "outrageous." Nor are Plaintiffs claims that they were "treated poorly"

and asked to fax the same documents several times sufficient to constitute conduct or actions sufficient to allow a claim for intentional infliction of emotional distress. *See id.*

Accordingly, Plaintiffs' fail to state a claim upon which relief may be granted for intentional infliction of emotional distress.

## 11.    Negligent Infliction of Emotional Distress

Plaintiffs' Eighth Cause of Action is for negligent infliction of emotional distress also based on defendants alleged "poor treatment" of Plaintiffs, and refusal to stop the foreclosure, or to give Plaintiffs a meaningful opportunity to respond.  Plaintiffs allege that this conduct was negligent insofar as Defendants failed to take reasonable care to avoid causing Plaintiffs emotional distress and anxiety. (*Amend. Cmplt.*, ¶¶ 11.1 - 11.4.)

To state a claim for negligent infliction of emotional distress, Plaintiffs must allege facts supporting "(1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the conduct and the plaintiff's injury; and (4) actual loss or damage." *Johnson v. McPhee*, 210 P.3d 563 (Idaho Ct. App. 2009) (citing *Brooks v. Logan*, 903 P.2d 73, 78 (Idaho 1995); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 804 P.2d 900, 904-05 (Idaho 1991);  *Nation v. State Dept. of Correction*, 158 P.3d 953, 965 (Idaho 2007)). Plaintiffs must also allege "some physical manifestation of the [their] emotional injury." *Id.* (citations omitted).

Defendants argue that Plaintiffs fail to state this claim upon which relief may be granted because none of the Defendants owed Plaintiffs a legal duty as a matter of law, and because the economic loss rule bars Plaintiffs' claim.[5]

### 1.     Legal Duty

It is well established in Idaho that "[n]o liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party." *Baccus v. Ameripride Serv., Inc*. 179 P.3d 309, 312 (Idaho 2008) (citing *Vickers v. Hanover Constr. Co., Inc.*, 875 P.2d 929, 932 (1994)).  Though every person in our society has the duty to use reasonable care to avoid injury to another person that is "reasonably anticipated or foreseen," absent a special relationship, there is generally no duty to act affirmatively to assist or protect someone.  *Id.* at 312 - 13 (citing *Coqhlan v. Beta Theta Pi Fraternity*, 987 P.2d 300, 311 (Idaho 1999).  However, if one voluntarily assumes such a duty, he or she must carry it out in a non-negligent manner.  *Id.* at 313 (citing *Coqhlan*, 987 P.2d at 312).

In addition, one cannot maintain a tort claim for violation of a duty which is created by contract. *Id.* (citing *Steiner Corp. v. American Dist. Telegraph*, 683 P.2d 435, 438 (Idaho 1984)).   To allege a tort claim, the duty must "be imposed by law independent of that arising out of contract." *Id.*

---

[5]Plaintiffs also failed to respond to Defendants' motion to dismiss this claim, which the Court may consider as consent to granting the motion.  The Court has considered the claim on its merits, however.

Defendants owe no duty that would support a claim of negligence based on the foreclosure actions. Any duty relating to the foreclosure arises from the parties' agreements – the Note and the Deed of Trust. Plaintiffs' allegations with respect to Defendants' actions in foreclosing therefore fail to state a claim for negligence.

The Note and the Deed of Trust, however, did not impose any duty upon the parties to work out a loan modification for Plaintiffs in the event of a default. Plaintiffs complaint alleges, vaguely, that Bank of America may have undertaken some action with respect to a loan modification that appears to be at least part of the basis for Plaintiffs' allegations of poor treatment. (*See Am. Cmplt.*,¶¶ 3.7, 3.8, 3.30.) Plaintiffs allege that "the Defendants and the Defendant Individuals contacted during the Modification process intentionally ran Plaintiffs around in circles by repeatedly requiring Plaintiffs to fax the identical documents upto[sic] sex[sic] (6) times only to be told that Plaintiffs did not qualify for a modification." (*Id.*, ¶ 3.30.)

Accordingly, Plaintiffs' negligence allegations as currently plead are not sufficient to state a claim upon which relief may be granted.

### 2. Economic Loss Rule

Idaho's economic loss rule bars purely economic damages for a tort claim, including one based in negligence. *Duffin v. Idaho Crop Improvement Ass'n*, 895 P.2d 1195, 1200 (Idaho 1995). Defendants argue that Plaintiffs' allegation that they are entitled to "compensation" for Defendants negligence runs contrary to the economic loss

doctrine.  To the extent it makes allegations of damage, Plaintiffs' Amended Complaint

refers to physical injury damages, which are damages recoverable under tort.  The

economic loss rule, therefore, would not be a basis for dismissing this claim.

**12.     Leave to Amend.**

A dismissal without leave to amend is improper unless it is beyond doubt that the

complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728,

737 (9th Cir. 2009)(issued 2 months after *Iqbal*).[6]  The Ninth Circuit has held that "in

dismissals for failure to state a claim, a district court should grant leave to amend even if

no request to amend the pleading was made, unless it determines that the pleading could

not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v.*

*Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).  The

issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to

support the claims."  *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d

1202, 1205 (9th Cir. 2007)(citations omitted).

Based on the foregoing Report, and based solely on the Plaintiffs' Amended

Complaint, the undersigned would recommend granting Defendants' motion to dismiss all

---

[6] The Court has some concern about the continued vitality of the liberal amendment policy
adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),
suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond
doubt that the plaintiff can prove no set of facts in support of his claim. . .."  Given *Twombly* and *Iqbal*'s
rejection of the liberal pleading standards adopted by *Conley,* a question arises whether the liberal
amendment policy of *Harris v. Amgen* still exists.  Nevertheless, the Circuit has continued to apply the
liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*.  *See Market
Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication).
Accordingly, the Court will continue to employ the liberal amendment policy.

of Plaintiffs' claims without leave to amend with the exception of Plaintiffs' negligence claim. In this instance, however, several facts were brought out in the hearing on February 27, 2012, that may or may not remedy the deficiencies noted in some of Plaintiffs' claims, but were not alleged or otherwise contained in Plaintiffs' pleadings and therefore also not addressed by the Defendants' motion. Because the Court cannot conclude "beyond a doubt" that an amendment cannot save those claims, and due to the procedural irregularities and Plaintiffs' misunderstanding regarding the status of the pleadings, the undersigned instead recommends that most of Plaintiffs' claims be dismissed without prejudice, but with leave to amend. This process of allowing leave to amend is consistent with the holdings of *Iqbal* and *Twombly*. *See Market Trading, Inc.,* 2010 WL 2836092.

The two exceptions to this recommendation are: (1) Plaintiffs' breach of fiduciary claims and (2) Plaintiffs' breach of the Idaho Trust Deeds Act based on the failure to produce the "wet ink" copy of the Note or an invalid assignment by MERS, as controlling precedent exists which is dispositive of both bases for this claim as explained above. *Trotter*, *supra*, *Cervantes*, *supra*. Accordingly, Plaintiffs may not allege these claims again in their Second Amended Complaint.

In drafting their amendment to the remaining claims, should they decide to do so, Plaintiffs must set forth all factual allegations and claims in one comprehensive pleading. Plaintiffs cannot reference previously filed pleadings or attachments. Plaintiffs should avoid boiler-plate, lengthy general statements and focus on setting forth, in plain english,

the *factual basis* for their claims.  In other words, Plaintiffs should clearly state what actions each Defendant took that Plaintiffs believe violated a law, how the Plaintiffs were damaged by the actions and what relief they are seeking under each claim for relief.

## ORDER

IT IS THEREFORE ORDERED:

1.     Defendants' Motion for Judicial Notice (Dkt. 19) is GRANTED;

2.     Defendants' counsel is relieved at this time from the Court's order to file an Affidavit addressing notary irregularities in certain documents filed with the Ada County Recorder within fourteen (14) days of the hearing; Defendants shall instead address the matter in due course in response to Plaintiffs' Second Amended Complaint, should one be filed.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED:

1.     Defendant's Motion to Dismiss (Dkt. 18) be GRANTED and Plaintiff's Amended Complaint (Dkt. 10) be DISMISSED in its entirety without prejudice as to all claims except Plaintiffs' First and Second Causes of Action, for Breach of Fiduciary Duty, and Fourth Cause of Action in part, as set forth above.

2.     Plaintiffs be allowed to file a Second Amended Complaint setting forth their remaining claims as described above within thirty (30) days of any

Order adopting this Report and Recommendation;

3.      Plaintiffs Motion for In Rem proceeding be denied as moot.



DATED:  **March 1, 2012**.

Honorable Larry M. Boyle
United States Magistrate Judge

## NOTICE

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1 and that the failure to do so may result in that party waiving the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals.  The parties are advised further that this is a report and recommendation and not a final, appealable order, and thus no appeal can be taken from this report and recommendation.